Case number 23-7077, Valores Mundiales, S.L. and Consorcio N.D., S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Extranjeras. Mr. Perla for the appellant, Mr. López-Morastier for the appellant. Good morning. Good morning, Juan Perla for the Bolivarian Republic of Venezuela. I reserve three minutes for rebuttal. May it please the court, the primary question in this appeal is whether, as a matter of U.S. law, federal court may enforce and give full faith and credit to an ICS award that was rendered in proceedings where the only U.S. Can you lift that? Yeah, thank you. I can't hear you. Question is whether an ICS award that was rendered in proceedings where the only U.S. recognized government foreign state respondent was not allowed to defend the state and instead an unrecognized, illegitimate government was purportedly allowed to talk and speak and find the foreign state in those proceedings. The answer is no, because the statute that implements the ICSID convention commands so. And we begin with the statute because the ICSID convention, under the ICSID convention, the ICSID awards are not self-executing. So they are only enforceable to the extent that Congress required them to be. And the text of the statute is clear that you have to treat and enforce and give the same full faith and credit to an ICSID award as if the award were a judgment of a state court. And that is critically, a critical part of the text of the statute, as if the award were. That means that you can't look at the ICSID award like the district court did and say this has to be enforced because it's special. It's different. It's ICSID. That cannot be the basis upon which the analysis turns because the question is, if the award were a state court judgment, how would I enforce and give it full faith and credit? The Second Circuit in the Mobile case has already adopted and ruled that you have to assimilate ICSID awards and enforce them as if they were state court judgments. Several district courts in this circuit have followed the same approach and said that you have to treat them in a parallel manner. That interpretation is consistent with the ICSID convention. The United States drafted a specific provision for itself in Article 54.1. And textually, that provision applies to a contracting state with a federal constitution. What more obvious way for the United States to make its federalism and constitutional concerns understood and adopted into the convention than using that language and insisting on including that language in Article 54.1 for purposes of enforcement within the United States? And when you treat an ICSID award as if it were a state court judgment, you have to apply the same procedures and substantive standards. That means you have to bring a plenary action, give full notice of the proceedings to the foreign state, assure yourself of personal and subject matter jurisdiction, validate the authenticity of the award. But then you also have to undertake the ordinary analysis that a federal court would do for whether you can enforce and give full faith and credit to that award as if it were a state court judgment. And there are rounds for refusing to enforce and give full faith and credit to a state court judgment. As limited and rare as they may be, and there is no dispute that those exceptions exist. And in this case, the problem with enforcing this ICSID award is that if a state court judgment were rendered and the U.S.-recognized government was not permitted to defend the state, and instead an unrecognized, illegitimate regime were allowed to come in and purportedly speak. No, this wasn't a state court proceeding. It was an ICSID proceeding. And within the rules of ICSID, there was no problem with the representation. Again, Your Honor, once you bring that award to the United States, you have to treat it as if it had been rendered by a state court. But that doesn't require an over-review. No, Your Honor, it doesn't require an over-review, but that is not what Venezuela is arguing here. We are not saying that there has to be a review of what the ICSID Annulment Committee did. What the court here has to do is undertake its own independent analysis under the U.S. Implementing Statute as to whether this award, if it were a state court judgment, could be enforced and given the same full faith and credit. I'd like to point you to the Annulment Committee's decision— Are you saying we have to undertake a merits analysis? An independent analysis under the U.S. Implementing Statute as to whether this award, if it were a state court judgment, could be enforced and given the same full faith and credit. That is different from what the ICSID— When we do that, we look to whether it would be valid within the state court. And here we look to whether it was due process within the meaning of an ICSID proceeding. And so we look to that. The ICSID standards are not the same as what would be required in a state court. Well, Your Honor, a couple points on that. First of all, the ICSID Annulment Committee itself at Joint Appendix 512 understood its own task, not as making a determination for all purposes. It says, There is no doubt that the committee cannot decide with effect erga omnes, which is Venezuela's legitimate representative. Erga omnes is an international obligation that is binding on all for all purposes. So even the ICSID Annulment Committee understood that it was making a very narrow determination. If this court were obligated by the ICSID Convention to give effect to that recognition of the Maduro regime, it would effectively put ICSID above the Supreme Court, above the executive branch. It would basically take an international decision and make it a part of the U.S. legal system, where a state court decision in the same circumstances would not— They weren't giving recognition to a particular government. They made that clear. The ICSID Annulment Committee was recognizing only the Maduro regime and deciding that the— They were issuing against the Venezuelan state. They weren't making a determination as to who should be recognized. So whatever your argument might be, if it were in a state proceeding, and I understand what you're saying, it's not what they were purporting to do. And it was a very fair procedure, at least facially. Everyone was given an opportunity to present on the issue, whether the state was adequately represented. And they explained why they did what they did. And that seems to me would satisfy due process requirements as we're supposed to enforce them in this kind of a situation. It's not the way we'd look at what goes before a stated. We have to look at what the ICSID procedure was and whether it satisfies due process requirements. They did what they were supposed to do. I had reserved three minutes there if I could respond to that. What ICSID did as a matter of ICSID is not what we're challenging. Dolores can take this award under the ICSID convention to another contracting state that recognizes the Maduro regime, and it may be enforceable there. But once you bring that award to the United States, you cannot import a recognition of the interim government and give it legal effect in contravention of and in defiance of the executive branch's recognition that only the interim government is Venezuela. And that comes directly from Zivotofsky. Zivotofsky says that the U.S. executive determination of a government is a determination as to who is Venezuela, who is the effective government of Venezuela. Mr. Perlow, here in this court, are you representing the Maduro regime of Venezuela or the interim government of Venezuela? Who is your client? Our client is Venezuela in the interim government. That is who we represent and we take instructions from. So the interim government, and this is important. Actually, this is critical because right now, Dolores is not in the U.S. just to get an award or to get a judgment, and that's all the end of it. We're on an expedited procedure here because Dolores is rushing to get to Delaware where they claim they can attach property of Venezuela. That is, in which, as a matter of U.S. law, the Maduro regime has no cognizable interest. They chose to litigate only with the Maduro regime at ICSID, but they're coming now to the United States in contravention of the recognition doctrine. But now they're coming to the United States and trying to attach property that they claim belongs to Venezuela, which the United States executive has said only the interim government has any interest in in terms of the representation of the government. This is a problem because what Dolores is trying to do here is to take this award and give it effect under U.S. law. But under U.S. law, the Maduro regime does not represent Venezuela. The Maduro regime is not Venezuela. Under U.S. law, you can't really collaterally challenge an ICSID arbitration. I mean, the Federal Arbitration Act doesn't apply. I mean, it's very, very limited grounds for challenging ICSID, and that's by the convention and by the implementing statute. And we are here under the implementing statute. And the implementing statute is what requires this court to give no greater deference to an ICSID award than it would to a state court judgment. And, again, the analysis cannot turn on how ICSID is special, not for enforcement purposes. The analysis has to turn on what would happen if this were a state court judgment. I'll point to the pink decision in the Supreme Court. There's two pinks, but this is Pink v AAA Highway Express. And in that case, the New York courts rendered an award against a mutual insurance – rendered a judgment against a mutual insurance company, including members who were Georgia citizens. But the Georgia citizens did not appear in New York. And when they went to Georgia to enforce the award, the Georgia courts said no, because as a matter of our law, these Georgia citizens never became members of that mutual insurance company. Therefore, they're not bound by that judgment. And that decision, under full faith and credit, went up to the U.S. Supreme Court. And while the judgment against the mutual insurance company may still be valid and enforceable in New York, as a matter of constitutional full faith and credit, Georgia did not have to give full faith and credit and enforce that judgment against its own citizens in Georgia. It undertook that analysis for itself, and the Supreme Court upheld it. But it didn't involve ICSID. But it doesn't matter, again, because under the ICSID implementing statute – But under the ICSID implementing statute – Points don't lead to the conclusion. I mean, I may be missing something. I don't see how you get to the conclusion you're advancing in that case. Because textually – You really want full substantive review. What do we think about this? That's not what the law requires of us. Not the convention, not the implementing statute, not any of the case law. That's not what we're supposed to do. We're to determine whether ICSID followed the rules of due process, reason, decision, honest, nothing untoward in the normal sense. And that's that. Your Honor, respectfully, the ICSID implementing statute does require something more. And that is what controls the DQF. In other words, you keep saying, like a state, as if this proceeding would have been in a state. It wouldn't have been in a state. The only place this would have occurred was where it initially occurred, in that arbitration. So that's what we look at to see whether due process was followed. So it's fanciful to say, well, think about how a state would have litigated this. No, that's not where it would have been litigated. It would have been litigated exactly where it was. And our question is whether due process was adhered to. Your Honor, but the ICSID implementing statute, Congress directed the court to engage in what you call this fanciful analysis by saying, treat it as if the award were. That's what the convention says, too. Yes, and that is what. But it doesn't have the meaning that you're suggesting. It doesn't make it other than the procedure that it was. And indeed, Congress was giving recognition to that procedure by adopting the convention and saying, that's OK under our law. Just make sure due process is followed because that's what we require of the states. We don't second guess the substantive decisions. There isn't a second guessing here of the substantive decision because this court cannot say that the Maduro regime and cannot give effect to what the ICSID annulment committee said the Maduro regime represents. They are not Venezuela. Venezuela was not defended and represented as a matter of U.S. law at the stages of the annulment proceedings. And that is what makes all the difference. Once you bring the ICSID award into the U.S. legal system and you try to use that judgment and to go after property of Venice, reportedly property of Venezuela in which the Maduro regime has no cognizable interest. It basically is like in Civitaski. It's not just about which lawyers come and represent Venezuela in the U.S. courts. It's about whether you can put the name Israel on the U.S. passport of a person that is born in Jerusalem. If Congress can't tell the executive to do that, how can ICSID tell this court that it must act in defiance of the executive branch when it decides that only the interim government is the effective government of Venezuela? The ICSID implementing statute says that you have to treat it as if the award were. And you can never have. It is implausible. And Dolores has not argued. The district court did not accept that a state court judgment that had been rendered against Venezuela in which only the Maduro regime had purportedly acted on behalf of Venezuela could satisfy the recognition doctrine or due process. And therefore it would not be enforceable and given full faith and credit in a federal court. There is no dispute about that. And because the statute says as if the award were a state court judgment, you have to treat it the same way. I mean, your position really would require us to import all constitutional protections into ICSID proceedings, which hardly seems to be. The import of the convention in the statute, because if it's due process and article to recognition, it's everything else. Why wouldn't it be, you know, the fourth, fifth and sixth amendments or, you know, you know, basically any other constitutional protections? Well, the article to in separation of powers, those are particularly important here because this court cannot do something that is reserved to the executive branch. The international treaty cannot give this court the power to endorse the view that the Maduro regime is the government of Venezuela in contravention of the executive's constitutional power under article two. So we're not talking about all U.S. law. And this is a very rare situation. It's not going to be which is the currently recognized government of Venezuela by the U.S. State Department, the interim government. Are they officially still recognized by the State Department? Yes. They are the only recognized government of Venezuela. There has been absolutely no recognition. I know that the State Department hasn't recognized the Maduro regime, but does the State Department still recognize the interim government? Yes, the government. Yes, Your Honor. The latest statements from the State Department is that the National Assembly and its leaders, which are the which is what we refer to as the interim government, is the only recognized government of Venezuela. Thank you. Morning. Morning, Your Honors. And may it please the court. I am Miguel Lopez from Covington and Berlin on behalf of Valores Mundiales and Consortium Dino. This court should affirm the district court judgment for two reasons. First, under the convention and implementing statute, U.S. courts are required to enforce the pecuniary obligations of exit awards. Without the sort of second-guessing that Venezuela seeks here. Second, even under Venezuela's reading of Section 1650A, there is no basis to deny full faith and credit to the pecuniary obligations of the award here. So let me start with the second point. Venezuela claimed below that it was deprived to process in the exit proceeding and that, as a result, the award here was not entitled to full faith and credit. On appeal, Venezuela has recast this as a separation of powers argument to challenge enforcement of the award. Under either analysis, Venezuela's argument fails. First, Venezuela is a foreign state. And this court has held that foreign states are not persons entitled to the process under the Fifth Amendment. Second, and more important, the exit proceedings did afford Venezuela sufficient process. The essence of the process is the opportunity to be heard. And here, Venezuela was heard and represented by able counsel acting on its behalf throughout the entire exit proceeding, arbitration proceeding. Venezuela has never argued that its counsel before exit was incompetent or provided ineffective assistance. There is no allegation or evidence of that here. And as a practical matter, had the interim government succeeded in displacing Venezuela's longstanding counsel at the exit, nothing would have changed. A different set of lawyers would have argued and advanced the same position Venezuela had already advanced in writing and all the award in whole or in part. So Venezuela, the state, suffered no prejudice whatsoever from what happened at the exit. And Venezuela here has not alleged, let alone proven, otherwise. Moreover, the lawyers for the interim government dropped the ball in the annulment proceeding. Having the opportunity to file a reply to show why they were entitled to the representation in that proceeding, they failed to do so. So they should not complain now about an alleged lack of due process when they fail to avail themselves of the opportunity they have to be heard on this very issue. Let me ask a question about the annulment proceeding. So, so in order to add those costs and fees from the proceeding, why was Flores not required to amend its complaint to add those additional costs and fees from the annulment proceeding? I'm sorry, your honor. I couldn't hear the first part. So, so why wasn't why wasn't Flores required to amend its complaint in order to add the costs and fees from the annulment proceeding? Yes, your honor. Thank you. Valeria was not required to amend the complaint because the complaint already claimed for an award of attorney fees. At that stage, the annulment proceeding was pending and ongoing. And there was a reference to that fact in the complaint. And it was the natural consequence that eventually those fees will be awarded in the annulment proceeding and will be part of the of the requested relief. The complaint also sought any other such relief that the court may deem just and proper. So it would also be encompassed under that claim for relief. So for that reason, there was no need to amend the complaint. And when Valores did request the court to award those fees before it issued its memorandum of opinion and before it issued the judgment. But not in its first status report after the annulment proceeding. That is correct. It did not request in the first status report. Do we do we review the district court's decision on those costs and fees under an abuse of discretion standard? That is correct, Your Honor. And under that standard, there is no abuse of discretion here. First, for the reasons that I just mentioned. But second, because rule, federal rule of evidence, federal rules of procedure 54C allows a court to grant any relief that a party is entitled to. And that is clearly the case here. So let me go back to the first issue that we were discussing, which is the third reason why this court should enforce the pecuniary obligations of the exit award. The judgment here does not conflict with U.S. recognition principles. By enforcing the pecuniary obligations of the exit award, the district court is not endorsing or contradicting the executive's recognition of Venezuela's interim government. The judgment enforces the pecuniary obligations of the award, not the annulment committee's decision on the recognition of the interim government. Or regarding which lawyers should represent Venezuela in that annulment proceeding. Venezuela has been represented by the U.S.-recognized government in U.S. court throughout the enforcement case. And the arbitration award letter is the state of Venezuela, not a particular government. And in any event, the court does not need to reach these questions. Since Section 1658 does not empower district courts to review exit awards. Under the full faith and credit standard, so long as exit would treat the award as binding and thus preclusive, so must the district court. There is no question that exit would treat the award here in this way. In other words, Section 1658 establishes that exit awards shall have res judicata effect in U.S. courts. Venezuela's torture reading of the statute eviscerates the provision of its intended effect. Since it means that the award effectively has no preclusive effect here in the United States because it cannot be enforced. Venezuela's interpretation also conflicts with the Exit Convention and its self-contained review regime. U.S. statutes must be interpreted consistent with U.S. treaty obligations. And there is no evidence that Congress meant to empower U.S. courts to second-guess the decisions of exit tribunals. All the cases that have interpreted the scope of Section 1658 have held the opposite is true. So, U.S. courts give full faith and credit to state court judgments by giving them the same preclusive effect that would apply in the state's own courts. Because the award is final and binding under the Exit Convention, it must be given the same preclusive effect in U.S. courts. For those reasons, Your Honor, I will conclude my argument. I think I covered the second issue with the questions that you raised. But I am happy to address any other questions that you may have. Thank you very much, Counselor. Thank you, Your Honor. Mr. Perla, we'll give you two minutes on rebuttal. The point I want to make right out of the gate is that this is not a recasting of the arguments made in the district court. Venezuela made the argument about the recognition doctrine in the summary judgment motion in the objections to the R&R. That's docket number 31, 14 to 15, docket number 34, 15 to 16. But more importantly, the district court itself understood that this was the recognition doctrine. And the violation of the recognition doctrine was a distinct basis for refusing to recognize and enforce the award in its analysis at Joint Appendix 847 to 848, subsection C of the district court's decision. So, this is not some sort of recasting of an argument. What happens is that once you deny the only recognized government the ability to act on behalf of Venezuela in the exit proceedings, you are no longer litigating with Venezuela as a matter of U.S. law. And when you bring that judgment, that award to the U.S., the U.S. courts have to undertake the analysis to make sure that the exit award, if it were a state court judgment, would be enforced. And I want to point out the Jimenez case, which is a Delaware state court decision where the Maduro regime came in and tried to exercise interests, shareholder interests, over property of a national oil, its national oil company in Venezuela. And the Delaware court said, you can't do that. We cannot allow you to appoint boards of directors because that would violate the executive's recognition of the interim government. Is the representation here inadequate in not meeting due process? Was it inadequate in any way other than under the recognition doctrine? I understand you think the recognition doctrine is itself a kind of due process violation. But was there any other due process way in which the representation was inadequate? Yes, the party that was bound by the award ultimately was not permitted to participate and defend. Venezuela was excluded as a matter of U.S. law. Venezuela was excluded from those proceedings. So you have now an award that purports to bind the state of Venezuela. Is there already argument that the two different governments have different interests for the state of Venezuela with respect to this expropriation claim? Well, the ICSID award, under international law, which is not what we apply in the United States for the recognition of government, the executive determination, there may be a decision that there is a decision as to whether each contract would have to make a decision as to whether they're going to give effect to that award in their territory. But in the United States, it is the executive who decides who is effective government of Venezuela, who is Venezuela. And the interim government is the only entity that is Venezuela. Your answer is no. I'm not answering the question. It's something that we judges would be interested in. Is there some substantive difference that one side as opposed to the other would be looking for? Well, the representation of the state. I don't know. In the result, let's go bottom line. Would one side be looking for something different in how the arguments were presented on behalf of Venezuela than the other side? Is there something that went on that was just patently offensive from your perspective? Because I couldn't figure that out reading the record. I'm wondering, what do you add that they didn't try? We add the representation of the actual parties. We understand the word representation. I'm trying to get you past that. As a matter of substance, were there some points, crucial points, that were not being made? I would add that the briefs were already submitted. Proceedings were almost concluded. So that's what we're trying to get at. Right. Well, let me answer it this way. Substantially the same situation played out in this court in the Ruzoro case. In Ruzoro, the Maduro regime, when it was recognized by the U.S. government, represented Venezuela throughout the district court proceedings and the briefing before this court. Then the U.S. recognized the interim government. The interim government came into this court and said, we are the ones who are, we are Venezuela, and we want to argue the appeal. The same people that were battling it out at ICSID, the reportedly Attorney General of Venezuela under the Maduro regime, came in and said, no, no, no, we are Venezuela. We are going to continue to represent Venezuela here. And this court in the Ruzoro decision said, absolutely not. That wasn't an arbitration. That wasn't an arbitration. That was an organic federal court litigation. But under the implementing statute, it makes no difference. Is your answer to Judge Raul, no, there's nothing in particular that you can point to other than it was someone different representing. Well, no, Your Honor. That's okay. If that's your answer, we'll take it under advisement. We know all the rest of your arguments, but be straight with us. If that's it, you can't think of anything, then that's it. No, Your Honor. In the counterfactual scenario that you explained, there may have been different things that Venezuela, that the interim government could have argued. In our district court briefing, we spelled it out. I'm happy to get that specific site to you. But in the briefing, I believe it's the reply, docket number 31. We explained that there are arguments that the Maduro regime could not advance in the ICSID proceedings because in per delicto would have prevented them from being able to make those arguments effectively. So there are things that the interim government, which could have argued at that stage, that in this counterfactual world that we can't know about because the interim government was not allowed to participate, could have made a difference. So that, however, is ultimately immaterial for the fact that this government's endorsement of the Maduro regime by giving full faith and credit in enforcing the ICSID award would be in defiance of the recognition by the executive branch that only the interim government is the government of Venezuela. And that this court cannot do under the implementing statute. Thank you. Thank you. Thank you. Thank you. Thank you for all the cases.
judges: Rao, Childs, Edwards